FILED _____ LODGED
RECEIVED _____ COPY

FEB 0 6 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ M. DEPUTY

SEALED

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-19-00146-PHX-GMS (JZB) |
| Plaintiff, | |
| vs. | **INDICTMENT** |
| 1. Solomon Ekunke Okpe,<br>(Counts 1-28) | VIO:    18 U.S.C. § 1349<br>Conspiracy<br>Count 1 |
| 2. Michael Eromosele,<br>(Counts 1-14, 17-26) | 18 U.S.C. § 371<br>Conspiracy<br>Count 2 |
| 3. Augustine Ebiwolate Kemih,<br>(Counts 1-3, 29) | 18 U.S.C. § 1956(h)<br>Conspiracy<br>Count 3 |
| 4. Abiodun Egbemonume Alphonsus,<br>(Counts 1-3) | 18 U.S.C. § 1343<br>Wire Fraud<br>Counts 4-16 |
| 5. Johnson Uke Obogo, and<br>(Counts 1-3) | |
| 6. Kingsley Aduile Emenike,<br>   a/k/a "Emenike Aduile Kingsley"<br>(Counts 1-3, 29) | 18 U.S.C. § 1028A(a)-(b)<br>Aggravated Identity Theft<br>Counts 17-28 |
| Defendants. | 18 U.S.C. § 1341<br>Mail Fraud<br>Count 29 |
| | 18 U.S.C. §§ 981(a)(1)(c),<br>982(a)(2), & 1030(i)<br>(Forfeiture Allegation) |

THE GRAND JURY CHARGES:

At all times material to this indictment, within the District of Arizona and elsewhere:

**INTRODUCTION**

1.     From at least as early as December 2011, and continuing through at least as recently as January 2017, defendants Solomon Ekunke Okpe ("OKPE"), Michael Eromosele ("EROMOSELE"), Augustine Ebiwolate Kemih ("KEMIH"), Abiodun Egbemonume Alphonsus ("ALPHONSUS"), Johnson Uke Obogo ("OBOGO"), Kingsley Adulie Emenike a/k/a "Emenike Adulie Kingsley" ("EMENIKE"), and others known and unknown to the Grand Jury, conspired to unlawfully enrich themselves by participating in an array of cyber-enabled financial frauds, including business email compromise ("BEC"), work-from-home, check-cashing, romance, and credit card scams. The scams perpetrated by the defendants targeted unsuspecting victims around the world, including individuals and local businesses across the State and District of Arizona, and attempted to cause more than a million dollars in losses.

2.     OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, were Nigerian nationals residing outside of the United States. Co-Conspirator 1 ("CC-1"), an individual whose identity is known to the Grand Jury, was a resident of Chicago, Illinois.

Other Relevant Entities and Individuals

3.     "First American Financial Corporation" or "First American" was a financial services company headquartered in Santa Ana, California that provided title insurance and settlement services to the real estate and mortgage industries. First American had branch offices in many states, including in Phoenix, Arizona. "FA-1," "FA-2," and "FA-3" were employees of First American in Phoenix, Arizona.

4.     "MidFirst Bank" was a financial service holding company headquartered in Oklahoma City, Oklahoma that operated branch offices in several states, including in Scottsdale and Phoenix, Arizona. The deposits of MidFirst Bank were insured by the Federal Deposit Insurance Corporation ("FDIC"). "MB-1" and "MB-2" were employees in MidFirst Bank's branch offices in Arizona.

5.     "Bank A" was a financial service holding company headquartered in Wayzata, Minnesota that operated branch offices in several states. The deposits of Victim Bank A were FDIC-insured.

6.     "Bank B" was a federal credit union headquartered in Mohegan Lake, New York. The deposits of Bank B were insured by the National Credit Union Share Insurance Fund.

7.     "Bank C" was a financial services holding company headquartered in New York, New York that operated branch offices in several states, including Arizona. The deposits of Bank C were FDIC-insured.

Relevant Terms and Definitions

8.     "Personal Identification Information" ("PII") includes—but is not limited to—name, date of birth, address, social security number, bank account numbers, bank routing numbers, credit card numbers, and any other name or number that may be used alone or in conjunction with any other information to identify a specific individual.

9.     A "phishing attack" is a fraudulent attempt to obtain sensitive information, such as user names, passwords, PII, and credit card numbers, by posing as a trustworthy entity in an electronic communication ("phishing emails").

BUSINESS EMAIL COMPROMISE SCAMS

10.     In the period from in or around December 2011 through in or around January 2017, the defendants and others executed BEC scams that involved gaining unauthorized access to a victim's email account, assuming control over the account, and sending emails to employees of companies doing business with the victim that directed the transfer of funds to specified bank accounts. The emails purported to be from the victim, but they were actually unauthorized wiring instructions initiated by the defendants and others acting in concert with them. To conceal the identity and criminal activity of the defendants, the defendants directed the companies to transfer the funds to bank accounts controlled by intermediaries acting at their direction. After companies complied with the fraudulent

wiring instructions, the transferred funds were quickly withdrawn or moved into different bank accounts.

11.     The defendants and others carried out the BEC scams by, among other means, (i) exchanging tools and computer intrusion techniques for gaining unauthorized access to email accounts, (ii) sharing access to compromised email accounts, (iii) drafting scripts for requesting fraudulent wire transfers from victims, (iv) completing fraudulent wire transfer request forms, and (v) coordinating and directing the activities of money mules, including correspondence with the victim companies.

The BEC Scheme to Defraud Victim 1, First American, and Victim Bank A

12.     For example, beginning on or about January 22, 2015, and continuing until at least March 12, 2015, OKPE, EROMOSELE, CC-1 and others devised and participated in a BEC scheme to intercept money that First American intended to transfer to Victim 1. As part of the scheme, OKPE gained access to Victim 1's email account ("Email Account-1") without his authorization from on or around January 22, 2015 to at least on around January 28, 2015. OKPE also caused Email Account-1 to send emails that tricked employees of First American into executing an unauthorized wire transfer of money to a bank account at Victim Bank A ending in 8970 that was registered to CC-1 ("Bank Account-1"). CC-1 then withdrew funds from Bank Account-1, and OKPE, EROMSELE and others attempted to transfer the remaining balance of the fraudulent wire transfer out of Bank Account-1.

13.     At or near the times that Fist American received fraudulent emails from Email Account-1, OKPE and EROMOSELE exchanged a number of electronic messages concerning the planning, execution, and status of the scheme, including coordinating the direction of other co-conspirators acting in concert with them, including CC-1.

The BEC Scheme to Defraud Victim 2, Victim 3, and MidFirst Bank

14.     On or about May 11, 2015, OKPE, an unidentified co-conspirator ("CC-2"), and others devised and participated in a BEC scheme to fraudulently induce MidFirst Bank to transfer money from a bank account at MidFirst Bank that was jointly held by Victim 2

and Victim 3 ("Bank Account-2") to a bank account specified by the co-conspirators. As part of the scheme, CC-2 and OKPE caused Victim 2's personal email account ("Email Account-2") to send emails to employees of MidFirst Bank (MB-1 and MB-2) that directed the unauthorized wire transfer of money from Bank Account-2. Victim 2 and Victim 3 were residents of Litchfield Park, Arizona at the time of the fraud.

## WORK-FROM-HOME AND CHECK FRAUD SCAMS

15.     In the period from in or around December 2011 through in or around January 2017, the defendants and others executed yet another form of cyber-enabled fraud called "work-from-home" scams. As part of these scams, the defendants and others often falsely posed as online employers on job websites and forums under fictitious online personas, advertised fake "jobs" that may be performed from home, and pretended to "hire" individuals in the United States to the positions. Although the positions were marketed as legitimate work, the new work-from-home "employees" were actually directed to perform tasks that facilitated other fraud scams, including creating bank and payment processing accounts, transferring or withdrawing money from accounts, and cashing or depositing counterfeit checks that the defendants and others created and caused to be delivered to the employees' home ("check fraud scams").

### The Scheme to Defraud Victim 4, Victim 5, and Victim Bank B

16.     In or around November 2014, Victim 4 was "hired" to a work-from-home position that was advertised as involving the purchase and reshipment of items. However, on or about November 22, 2014, Victim 4 received a counterfeit cashier's check for approximately $1,980 through the United States Postal Service at her residence in Gilbert, Arizona, and was directed to cash it by someone who posed as her supervisor. The check purported to be issued by Bank B, and signed by Bank B's President and Chief Executive Officer ("Victim 5") on or about November 21, 2014, but was actually counterfeit.

### The Check Fraud Scam to Defraud Victim 2, Victim 3, and MidFirst Bank

17.     After attempting to defraud Victim 2, Victim 3 and MidFirst Bank through a BEC scam on or around May 11, 2015, OKPE and others facilitated a widespread check

fraud scam that yet again targeted the same victims. As part of the scam, individuals in the United States were directed to deposit dozens of counterfeit checks that sought to draw hundreds of thousands of dollars from Bank Account-2, and another business checking account at MidFirst Bank for Victim 2's business ("Bank Account-3"). The checks were dated between on or around May 19, 2015 and on or around July 29, 2015.

ROMANCE SCAMS

18.     In the period between December 2011 and January 2017, the defendants and others executed yet another form of cyber-enabled fraud called "romance" scams. As part of these scams, the co-conspirators created fictitious online personas, registered and created profiles on various online dating websites to identify and connect with potential victims, initiated online romantic relationships with the individuals to gain their confidence, and exploited that confidence to cause funds to be transferred for unauthorized purposes, or acts to be performedin furtherance of the co-conspirators' other frauds.

19.     For example, between in or around May 2014, and continuing through in or around July 2014, EROMOSELE, OKPE, CC-1, and others participated in a scam that involved creating an online persona on a dating website under the name "Carlson Branagh," initiating an online and telephonic romantic relationship with Victim 6—a resident of Casa Grande, Arizona at the time—and using the false pretenses of the relationship to deceive Victim 6 into transferring and attempting to transfer money to "Carlson Branagh" through intermediary accounts specified by the co-conspirators, including accounts controlled by CC-1. In total, the co-conspirators defrauded Victim 6 of approximately $49,060, and attempted to defraud Victim 6 of even more.

CREDIT CARD SCAMS

20.     In the period from in or around December 2011 through in or around January 2017, the defendants and others executed credit card fraud by transferring credit card information and PII without authorization for the purposes of defrauding victim credit card owners, and paying for services or accounts used to commit other cyber-enabled financial fraud schemes. The co-conspirators often obtained stolen credit card information by

purchasing it from "hackers" and other illicit sources who engaged in the theft and sale of this information.

## COUNT 1
### Conspiracy to Commit Wire, Mail, and Bank Fraud
### (18 U.S.C. § 1349)

21.   The factual allegations above are incorporated in Count 1.

22.   From at least as early as December 2011, and continuing through at least as recently as January 2017, in the District of Arizona and elsewhere, the defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others known and unknown to the Grand Jury, unlawfully, did knowingly and intentionally, agree and conspire to:

a.   devise a scheme and artifice to defraud and to obtain money or property by means of false and fraudulent pretenses, representations, and promises; and in executing and attempting to execute this scheme and artifice, knowingly and unlawfully caused to be delivered by the United States Postal Service and private and commercial carriers matters and things according to the direction thereon, in violation of Title 18, United States Code, Section 1341;

b.   devise and execute and attempt to execute, a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises; and in executing and attempting to execute this scheme and artifice, to knowingly cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain signs, signals and sounds as further described below, in violation of Title 18, United States Code, Section 1343; and

c.   execute and attempt to execute a scheme and artifice to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody or control of, a financial institution, by means of false and fraudulent pretenses, representations, or promises, in violation of Title 18, United States Code, Section 1344.

MANNER AND MEANS

23.   It was part of the conspiracy that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others, devised, executed, and facilitated multiple cyber-enabled financial frauds, including BEC, work-from-home, check fraud, romance, and credit card scams against victims located in the United States.

24.   It was further part of the conspiracy that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others, devised, executed, and facilitated email phishing schemes over the internet that harvested the email addresses, passwords, credit card information, and PII of unsuspecting victims. The schemes included using template files to design and create phishing login webpages that resembled the login pages of legitimate websites, publishing the phishing login webpages on compromised websites by purchasing the websites' credentials from unknown hackers, and sending emails of phishing login webpages to large volumes of unsuspecting victims.

25.   It was further part of the conspiracy that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others, gained unauthorized access to email and other online accounts, monitored the accounts' activities, and collected sensitive PII that could be used to conduct other cyber-enabled financial fraud schemes.

26.   It was further part of the conspiracy that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others, concealed their identity and criminal activity through a number of means, including by using aliases, online nicknames, fake email and online accounts, stolen identities, and the PII of others.

27.   It was further part of the conspiracy that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others, opened and caused others to open bank and other financial accounts for the purpose of receiving fraudulently-obtained funds, and transmitting fraudulently-obtained funds to other accounts under their control.

28.   It was further part of the conspiracy that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others, facilitated check fraud

scams by causing the delivery of counterfeit checks through the United States Postal Service and private and commercial carriers.

29.    It was further part of the conspiracy that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others, concealed their identities and criminal activity by laundering the proceeds of their financial fraud schemes through accounts controlled by complicit and unwitting individuals in the United States—*i.e.*, "money mules." The money mules opened or maintained bank or other financial accounts that received the proceeds of fraudulent wire transfers, and then wire transferred or otherwise conveyed the proceeds of fraudulent wire to bank or other financial accounts specified by the co-conspirators.

30.    It was further part of the conspiracy that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others would obtain and traffic stolen PII, as well as compromised credit card and banking information, by purchasing the stolen data from various hackers who advertised and sold the stolen data online. The stolen data was used to, among other things, identify potential victims of cyber-enabled financial fraud, and pay for services or accounts used to commit cyber-enabled financial fraud, including registering or creating profiles on various online dating websites, publishing fraudulent job advertisements on various employment websites, and purchasing online or computer services.

31.    It was further part of the conspiracy that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others, would fraudulently assume the identities of victims to execute and facilitate cyber-enabled financial fraud schemes through a number of means, including by sending emails under the victim's identity from either the victim's compromised online accounts or spoof accounts that resembled the victim's online accounts.

32.    It was further part of the conspiracy that that defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others communicated with each other and other co-conspirators through a number of means,

including email, chats, and telephone, concerning the planning and execution of schemes to defraud potential victims in the United States.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Commit Computer Intrusion and Access Device Fraud
### (18 U.S.C. § 371)

33.     The factual allegations above are incorporated in Count 2.

OFFENSE

34.     From at least as early as December 2011, and continuing through at least as recently as January 2017, in the District of Arizona and elsewhere, the defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly agreed, combined, and conspired to:

a.     knowingly and with intent to defraud possess more than fifteen unauthorized access devices, as defined in Title 18, United States Code, Section 1029(e)(3), said possession affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(a)(i).

b.     intentionally access a protected computer to obtain information valued at more than $5,000, in violation of Title 18, United States Code, Section 1030(a)(2); and

c.     knowingly and with intent to defraud, access a protected computer without authorization and by means of such conduct further the intended fraud and obtain information valued at more than $5,000, in violation of Title 18, United States Code, Section 1030(a)(4).

MANNER AND MEANS

35.     To carry out the conspiracy and to effects its unlawful objects, defendants, OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others engaged in the manner and means described in Count 1 of this Indictment, among others.

OVERT ACTS

36.   In furtherance of the conspiracy, and to achieve the objects thereof, the defendants OKPE, EROMOSELE, KEMIH, ALPHONSUS, OBOGO, and EMENIKE, and others did commit and caused to be committed a number of overt acts, including the following overt acts, among others:

### Facilitating Email Phishing or Spamming

a.   On or about April 10, 2014, OKPE and OBOGO used an online messaging service to discuss "spamming" victims, and purchasing new phishing tools.

b.   On or about August 7, 2014, OKPE and OBOGO used an online messaging service to discuss a phishing tool that "get plenty email," and required a $10 payment to hackers.

c.   On or about January 15, 2015, OKPE used an online messaging service to teach OBOGO how to establish phishing websites that can be used to harvest credentials of unsuspecting online victims and commit online fraud.

d.   On or about February 2, 2015, OKPE and OBOGO used an online messaging service to discuss using the user credentials needed to control a compromised webpage, and purchasing a new phishing tool from a hacker.

e.   On or about March 12, 2015, OKPE used a compromised webpage to launch an email phishing attack against Email Account-1.

f.   On or about June 12, 2015, EMENIKE and KEMIH used an online messaging service to discuss buying a new phishing tool.

### Trafficking and Possessing Credit Card and PII Without Authorization

g.   On or about February 17, 2014, OKPE used an online messaging service to ask OBOGO to buy a "cc" for him. OBOGO responded by providing the credit card information and other PII of Victim 7.

h.   On or about December 1, 2014, KEMIH used an online messaging service to request that EMENIKE "paste me the cc bros." EMENIKE responded with the credit card information of Victim 8.

1          i.      On or about June 18, 2015, KEMIH used an online messaging service

2   to request credit card information from EROMOSELE. EROMOSELE responded to the

3   request by providing credit card information and other PII belonging to Victim 9.

4          j.      On or about June 23, 2015, KEMIH used an online messaging service

5   to request a "cc" number. An unidentified co-conspirator responded by sending the credit

6   card number and PII of Victim 10, who resided in Maricopa, Arizona around that time.

7          k.      On or about October 14, 2015, OKPE used an online messaging

8   service to send KEMIH messages containing the credit card information and other PII of

9   Victim 11, who resided in Casa Grande, Arizona around that time.

10          l.      On or about April 30, 2016, ALPHONSUS used an online messaging

11   service to send a co-conspirator the credit card information and other PII of Victim 12 to

12   pay for posting an online job advertisement on a job search website.

13          All in violation of Title 18, United States Code, Section 371.

14

15   **COUNT 3**<br>**Money Laundering Conspiracy**

16   **(18 U.S.C. § 1956(h))**

17       37.     The factual allegations above are incorporated in Count 3.

18       38.     From at least as early as December 2011, and continuing through at least as

19   recently as January 2017, the defendants, OKPE, EROMOSELE, KEMIH, ALPHONSUS,

20   OBOGO, and EMENIKE, and others known and unknown to the Grand Jury, unlawfully,

21   willfully, and knowingly agreed, combined, and conspired with each other and other

22   persons known and unknown to the grand jury, to commit offenses against the United

23   States in violation of Title 18, United States Code, Section 1956(a)(1), to wit, knowingly

24   conducting and attempting to conduct, financial transactions affecting interstate and

25   foreign commerce, which transactions involved the proceeds of specified unlawful activity,

26   that is violations of Title 18, United States Code, Sections 1343 and 1349, knowing that

27   the transactions were designed in whole or in part to conceal and disguise the nature,

28

location, source, ownership, and control of the proceeds of the specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

39.     The unlawful objectives of the conspiracy were accomplished through a number of manner and means, including those described in Count 1 of this Indictment, among others.

**COUNTS 4-14**
**Wire Fraud**
**(18 U.S.C. § 1343)**

40.     The factual allegations above are incorporated in Counts 4-14.

41.     Beginning on or about January 22, 2015, and continuing thereafter until at least on or about March 12, 2015, in the District of Arizona and elsewhere, the defendants OKPE, EROMOSELE, and others devised and intended to devise a scheme and artifice to defraud, namely the scheme described in Count 1, and to obtain money and property from Victim 1, First American, and Bank A, by means of materially false and fraudulent pretenses, representations and promises.

42.     On or about each of the dates set forth below, for the purpose of executing the scheme described above, and attempting to do so, the defendants OKPE and EROMOSELE did knowingly cause to be transmitted by means of wire communication in interstate and foreign commerce to and from Arizona, the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Approximate Date | Wire Transmission |
|-------|------------------|-------------------|
| 4 | January 22, 2015 | Email from Email Account-1 to an email account of a First American employee (FA-1) in Phoenix, Arizona under the subject line "Re: SLidell, LA - TIC5" asking if Victim 1's original instructions for wire transferring the proceeds of the sale of Victim 1's Property could still be changed. |

| Count | Approximate Date | Wire Transmission |
|---|---|---|
| 5 | January 22, 2015 | Email from Email Account-1 to an email account of a First American employee (FA-1) in Phoenix, Arizona under the subject line "Re: SLidell, LA - TIC5" instructing FA-1 to wire money to Bank Account-1. |
| 6 | January 23, 2015 | Email from Email Account-1 to an email account of a First American employee (FA-1) in Phoenix, Arizona under the subject line "Closing" to check on the status of the closing of Victim 1's Property and the requested wire transfer to Bank Account-1. |
| 7 | January 23, 2015 | Email from Email Account-1 to an email account of a First American employee (FA-1) in Phoenix, Arizona under the subject line "Confirmation" checking on the status of the wire transfer. |
| 8 | January 23, 2015 | Email from Email Account-1 to an email account of a First American employee (FA-1) in Phoenix, Arizona under the subject line "Re: Confirmation" seeking a "confirmation slip" for the wire transfer. |
| 9 | January 23, 2015 | Interstate wire transfer in the approximate amount of $210,197.21 from First American to Bank Account-1 (the "Wire") that was initiated by FA-2 of First American in Phoenix, Arizona using First American's FAST Transaction System. |

| Count | Approximate Date | Wire Transmission |
|-------|------------------|-------------------|
| 10 | January 27, 2015 | Email from Email Account-1 to the email accounts of First American employees (FA-1, FA-2) in Phoenix, Arizona under the subject line "Re: FW: SLidell, LA - TIC5" requesting that FA-1 and FA-2 remove the hold on the funds transferred through the Wire to Bank Account-1. |
| 11 | January 28, 2015 | Email from Email Account-1 to the email account of a First American employee (FA-1) in Phoenix, Arizona under the subject line "Call" requesting a return call. |
| 12 | January 28, 2015 | Email from Email Account-1 to the email account of a Company A employee (FA-2) in Phoenix, Arizona under the subject line "Call" requesting a call regarding the Wire to Bank Account-1. |
| 13 | January 28, 2015 | Email from Email Account-1 to the email account of a First American employee (FA-3) in Phoenix, Arizona under the subject line "Re: Call" requesting that FA-3 remove the hold on the funds transferred through the Wire to Bank Account-1. |
| 14 | January 28, 2015 | Email from Email Account-1 to the email account of a Company A employee (FA-3) in Phoenix, Arizona under the subject line "Call" requesting a return call. |

All in violation of Title 18, United State Code, Section 1343.

## COUNTS 15-16
### Wire Fraud
### (18 U.S.C. § 1343)

43.    The factual allegations above are incorporated in Counts 15-16.

44.     Beginning at a date unknown, but no later than on or about May 11, 2015, in the District of Arizona and elsewhere, the defendant OKPE, CC-2, and others devised and intended to devise a scheme and artifice to defraud, namely the scheme described in Count 1, and to obtain money and property from Victim 2, Victim 3, and MidFirst Bank, by means of materially false and fraudulent pretenses, representations and promises.

45.     For the purpose of executing the scheme described above, and attempting to do so, the defendant OKPE, CC-2, and others caused the transmission by means of wire communication in interstate and foreign commerce, the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Approximate Date | Wire Transmission |
|-------|------------------|-------------------|
| 15 | May 11, 2015 | Email from Email Account-2 to the email account of a MidFirst Bank employee (MB-1) in Scottsdale, Arizona under the subject line "Transfer Request" that asked for assistance with processing a wire transfer of approximately $18,550 from Bank Account-2. |
| 16 | May 11, 2015 | Email from Email Account-2 to the email accounts of MidFirst Bank employees (MB-1 and MB-2) in Scottsdale, Arizona under the subject line "Re: Transfer Request" that attached a completed form requesting a wire transfer of approximately $18,550 from Bank Account-2. |

All in violation of Title 18, United State Code, Section 1343.

## COUNTS 17-26
### Aggravated Identity Theft
### (18 U.S.C. § 1028A(a)-(b))

46.     The factual allegations above are incorporated in Counts 17-26.

47.    On or about each of the dates set forth below, in the District of Arizona and elsewhere, the defendants, OKPE and EROMOSELE, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person as defined in Title 18, United States Code, Section 1028(d)(7)(A), specifically, the name and unique email address of Victim 1, during and in relation to a felony violation enumerated in Title 18, United States Code Section 1028A(c), to wit Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1):

| Count | Approximate Date | Wire Transmission |
|-------|------------------|-------------------|
| 17 | January 22, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) to send an email to a First American employee (FA-1) in Phoenix, Arizona, under the subject line "Re: SLidell, LA - TIC5," as charged in Count 4. |
| 18 | January 22, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) to send an email to a First American employee (FA-1) in Phoenix, Arizona, under the subject line "Re: SLidell, LA - TIC5," as charged in Count 5. |
| 19 | January 23, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) to send an email to a First American employee (FA-1) in Phoenix, Arizona, under the subject line "Closing," as charged in Count 6. |

| Count | Approximate Date | Wire Transmission |
|---|---|---|
| 20 | January 23, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) to send an email to a First American employee (FA-1) in Phoenix, Arizona, under the subject line "Confirmation," as charged in Count 7. |
| 21 | January 23, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) to send an email to a First American employee (FA-1) in Phoenix, Arizona, under the subject line "Re: Confirmation," as charged in Count 8. |
| 22 | January 27, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) to send an email to First American employees (FA-1, FA-2) in Phoenix, Arizona, under the subject line "Re: FW: SLidell, LA - TIC5," as charged in Count 10. |
| 23 | January 28, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) to send an email to a First American employees (FA-1) in Phoenix, Arizona, under the subject line "Call," as charged in Count 11. |
| 24 | January 28, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) to send an email to a First American employees (FA-2) in Phoenix, Arizona, under the subject line "Call," as charged in Count 12. |

| Count | Approximate Date | Wire Transmission |
|-------|-----------------|-------------------|
| 25 | January 28, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) in an email to First American employee (FA-3) in Phoenix, Arizona, as charged in Count 13. |
| 26 | January 28, 2015 | OKPE transferred, possessed, and used Victim 1's name and unique email address (Email Account-1) in an email to First American employee (FA-3) in Phoenix, Arizona, as charged in Count 14. |

All in violation of Title 18, United States Code, Section 1028A(a) and (b).

**COUNTS 27-28**
**Aggravated Identity Theft**
**(18 U.S.C. § 1028A(a)-(b))**

48.    The factual allegations above are incorporated in Counts 27-28.

49.    On or about each of the dates set forth below, in the District of Arizona and elsewhere, the defendant OKPE knowingly directed CC-2 to transfer, possess, and use, without lawful authority, a means of identification of another person as defined in Title 18, United States Code, Section 1028(d)(7)(A), specifically, the name and unique email address of Victim 2, during and in relation to a felony violation enumerated in Title 18, United States Code Section 1028A(c), to wit Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1):

| Count | Approximate Date | Wire Transmission |
|-------|------------------|-------------------|
| 27 | May 11, 2015 | OKPE directed CC-2 to transfer, possess and use Victim 2's name and unique email address (Email Account-2) in an email to a MidFirst Bank employee (MB-1) in Scottsdale, Arizona under the subject line "Transfer Request," as charged in Count 15. |
| 28 | May 11, 2015 | OKPE directed CC-2 to transfer, possess and use Victim 2's name, unique email address (Email Account-2), bank account number (Bank Account-2), and signature in an email to MidFirst Bank employees (MB-1, MB-2) in Scottsdale, Arizona under the subject line "Transfer Request," as charged in Count 16. |

All in violation of Title 18, United States Code, Section 1028A(a) and (b).

### COUNT 29
### Mail Fraud
### (18 U.S.C. § 1341)

50.     The factual allegations above are incorporated in Count 29.

51.     In or around November 2014, in the District of Arizona and elsewhere, the defendants EMENIKE, KEMIH, and others did knowingly devise and intend to devise a scheme and artifice to defraud, namely the scheme described in Count 1, and to obtain money and property from Victim 4, Victim 5, and Victim Bank B, by means of materially false and fraudulent pretenses, representations and promises.

52.     On or about November 22, 2014, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, the defendants EMENIKE and KEMIH knowingly caused to be delivered by the United States Postal Service to Victim 4 in Gilbert, Arizona, according to the directions thereon, a counterfeit check no. 423907 drawn from Bank B in the approximate amount of $1,980.

All in violation of Title 18, United State Code, Section 1341.

**Forfeiture Allegation**
**(18 U.S.C. §§ 982(a)(1)(c), 982(a)(2), & 1030(i))**

53.     The Grand Jury realleges and incorporates the allegations of Counts 1 through 29 of this Indictment, which are incorporated by reference as though fully set forth herein.

54.     Pursuant to Title 18, United States Code, Sections 981, 982, and 1030(i), Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c) and upon conviction of one or more of the offenses alleged in Counts 1 through 29 of this Indictment, the defendants shall forfeit to the United States all right, title, and interest in the following:  (a) all property, real or personal, involved in a transaction or attempted transaction in violation of a money laundering statute, or any property traceable to such property; (b) all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity; (c) all property constituting, or derived from, proceeds obtained directly or indirectly as a result of a violation of an offense alleged in this Indictment; and (d) all personal property used or intended to be used to commit or facilitate the commission of an offense alleged in this Indictment.

55.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence,

      b.     has been transferred or sold to, or deposited with, a third party,

      c.     has been placed beyond the jurisdiction of the court,

      d.     has been substantially diminished in value, or

      e.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of said defendants up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

1      All in accordance with Title 18, United States Code, Sections 981, 982 and

2  1030(i), Title 21, United States Code, Section 853, Title 28, United States Code, Section

3  2461(c), and Rule 32.2, Federal Rules of Criminal Procedure.

A TRUE BILL

/S/
_____
FOREPERSON OF THE GRAND JURY
Date: February 6, 2019

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona


     /S/
_____
M. BRIDGET MINDER
JAMES R. KNAPP
Assistant U.S. Attorneys


     /S/
_____
AARASH A. HAGHIGHAT
TIMOTHY C. FLOWERS
Senior Trial Attorneys