FILED ✓ LODGED RECEIVED COPY
DEC 13 2022
CLERK U S DISTRICT COURT DISTRICT OF ARIZONA
BY VGM DEPUTY

✗ FILED LODGED RECEIVED COPY
MAR 27 2023
CLERK U S DISTRICT COURT DISTRICT OF ARIZONA
BY DEPUTY

GARY M. RESTAINO
United States Attorney
District of Arizona
JAMES R. KNAPP
Arizona State Bar No. 021166
Email: james.knapp2@usdoj.gov
SETH T. GOERTZ
Arizona State Bar No. 031645
Email: seth.goertz@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500

KENNETH A. POLITE JR.
Assistant Attorney General
U.S. Department of Justice, Criminal Division
AARASH A. HAGHIGHAT
Trial Attorney
D.C. Bar No. 997228
Email: aarash.haghighat@usdoj.gov
Computer Crime and Intellectual Property Section
U.S. Department of Justice
1301 New York Ave. NW, Suite 600
Washington, D.C. 20005
Telephone: 202-616-2929

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

vs.

Solomon Ekunke Okpe,

Defendant.

No. CR- 19-00146-001-PHX-GMS

**PLEA AGREEMENT**

Plaintiff, United States of America, and the defendant, SOLOMON EKUNKE OKPE, hereby agree to dispose of this matter on the following terms and conditions:

**1. PLEA**

The defendant will plead guilty to Count 1 of the Indictment charging the defendant with a violation of 18 United States Code (U.S.C.) § 1349, Conspiracy to Commit Wire,

SCANNED
65

Mail, and Bank Fraud, a Class C felony offense, and Count 17 of the Indictment charging the defendant with a violation of 18 U.S.C. § 1028A, Aggravated Identity Theft, a Class E felony offense.

**2. MAXIMUM PENALTIES**

a. A violation of 18 U.S.C. § 1349 is punishable by a maximum fine of $250,000, a maximum term of imprisonment of 20 years, or both, and a term of supervised release of up to three years. A violation of 18 U.S.C. § 1028A is punishable by two years of imprisonment that must run consecutive to any term of imprisonment imposed for the violation of 18 U.S.C. § 1349.

b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

d. The defendant recognizes that pleading guilty may have consequences with respect to defendant's immigration status if the defendant is a recently naturalized United

States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Although there may be exceptions, the defendant understands that the defendant's guilty plea and conviction for this offense make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States. The defendant agrees that defendant has discussed this eventuality with defendant's attorney. The defendant nevertheless affirms that defendant wants to plead guilty regardless of any immigration consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

**3. AGREEMENTS REGARDING SENTENCING**

a. Recommendation: Acceptance of Responsibility. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), if the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

b. Recommendation: No Role Adjustment. Pursuant to Fed. R. Crim. P. 11(c), the United States will recommend no increase under U.S.S.G. § 3B1.1.

c. Recommendation. Sentence. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend a variance from a guidelines sentence to credit the defendant for the time he was detained by Malaysian authorities pursuant to the Indictment.

d. Non-Binding Recommendations. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

e. Sentencing Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulate that the defendant's sentence shall not exceed the low end of the recommended guideline range.

f. Stipulation: Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $500,000, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

g. Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

**4. AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss the following charges as to this defendant: Counts 2-16 and 18-28 of the Indictment.

**5. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6. WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under

18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**7. <u>DISCLOSURE OF INFORMATION</u>**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8. <u>FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS</u>**

a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of

payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

**9. <u>ELEMENTS</u>**

**Conspiracy to Commit Wire, Mail, and Bank Fraud**

Between December 2011 and January 2017, in the District of Arizona and elsewhere:

1. There was an agreement between two or more persons to commit the crimes of wire, fraud, mail fraud, and bank fraud; and
2. The defendant became a member of the conspiracy, knowing of its object and intending to help accomplish it.

The elements of the underlying substantive offenses of wire, mail, and bank fraud are that, between December 2011 and January 2017, in the District of Arizona and elsewhere:

1. The defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;
2. The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;
3. The defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and
4. One or more co-conspirators used, or caused to be used, the interstate or foreign wire communications (for wire fraud) and the mails (for mail fraud) to carry out or attempt to carry out an essential part of the scheme, or the scheme involved a federally insured bank (for bank fraud).

**Aggravated Identity Theft**

On or about January 22, 2015, in the District of Arizona and elsewhere:

1. The defendant knowingly transferred, possessed, and used without legal authority a means of identification of another person;
2. The defendant knew that the means of identification belonged to a real person; and
3. The defendant did so during and in relation to a wire fraud offense.

**10. FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

I, Solomon Ekunke Okpe, conspired and agreed with Michael Eromosele, Augustine Ebiwolate Kemih, Abiodun Egbemonume Alphonsus, Johnson Uke Obogo, Kingsley Aduile Emenike, and others to obtain money through multiple online fraud schemes between in or around December 2011 through in or around January 2017, including business email compromise (BEC), work-from-home, romance, check-fraud, and credit-card scams.

To conduct these fraud schemes, I, Solomon Ekunke Okpe, often worked with co-conspirators to first gain unauthorized access to victim email and online accounts through multiple means, including email phishing attacks that harvested the email addresses, passwords, credit card information, and sensitive personally identifying information (PII) of unsuspecting victims. The phishing attacks involved using template files to create phishing login webpages that resembled the login pages of legitimate websites, and transmitting these phishing login webpages to large volumes of unsuspecting victims through bulk emailing or "spamming." To obscure our role in hosting these phishing webpages, we often published them on compromised websites that we purchased through the stolen credit card information of U.S. persons that we possessed and trafficked.

For instance, in or around February 2014, Obogo provided me stolen credit card information that I then used to purchase the credentials for a website's control dashboard or "cPanel" to create a phishing website. Further, in or around January and February 2015, I taught Obogo how to set up a phishing website to steal the login and password information of unsuspecting victims that could, in turn, be used to conduct the above-described fraud scams.

As part of the scheme, I, Solomon Ekunke Okpe, and others then used our unauthorized access to victim email and online accounts to conduct other fraud schemes, such as BEC. For instance, from in or around January 2015 through March 2015, I worked with Eromosele and others to steal $210,197.21 from a title company in Arizona. To execute the scheme, on or around January 22, 2015, I gained unauthorized access and control over the Gmail account of a real person, D.G., who had sold commercial property and was expecting a payment of $210,197.21 from the title company. Among

other things, I ensured my control over D.G.'s Gmail account by changing the recovery information for his account to an email account and phone number that I controlled and used. I knew that D.G. was a real person and used his name and compromised Gmail account to communicate with the title company to divert the payment owed to him to a coconspirator in Chicago. I continued to use D.G.'s compromised Gmail account to convince the bank to release a hold on the funds.

To plan and carry out this scheme, I communicated with Eromosele and others through Yahoo chat messages. I also attempted to continue my victimization of D.G. by transmitting an additional phishing webpage to D.G.'s email account in March 2015.

In another scam, I collaborated with another co-conspirator to steal funds from the bank accounts of Arizona victims, S.B. and R.B, that were maintained at a bank with branch offices in Arizona. As part of the scheme, I gained unauthorized access to S.B.'s personal email accounts, and my co-conspirator and I used it to direct employees at the bank's Arizona branch offices in an attempt to transfer approximately $18,550 out of the victims' personal bank account without their authorization.

I also worked with others to commit a range of other online fraud schemes, including work-from-home scams that, among other things, involved cashing fake checks. For example, in or around June 2012, I directed Alphonsus in a work-from-home scam that involved tricking the victim into sending $2400 by wire transfer after the victim received a fake check for approximately $2450. In February 2014, I communicated with Kemih through Yahoo chat messages about obtaining funds from a "money mule"—an unwitting money launderer. In July 2014, I posed as "Jeff Buffet" in a romance scam, attempting to convince a woman I met on match.com named M.C. to send me $20,000.

The co-conspirators and I conducted the above-described acts in furtherance of this scheme from locations outside the United States, including in Malaysia and Nigeria, among other places.

b.  The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to

trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

11 - 17 - 2022
Date

SOLOMON EKUNKE OKPE
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

11/17/2022
Date

ZACHARY D. CAIN
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GARY M. RESTAINO
United States Attorney
District of Arizona

KENNETH A. POLITE JR.
Assistant Attorney General
U.S. Department of Justice, Criminal Division

11/17/2022
Date

JAMES R. KNAPP
SETH T. GOERTZ
Assistant U.S. Attorneys
AARASH A. HAGHIGHAT
Trial Attorney, CCIPS

**ACCEPTANCE BY THE COURT**

3/27/23
Date

HON. G. MURRAY SNOW
United States District Judge